```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

David Ulitsch

    v.                                    Civil No. 18-cv-694-JL
                                              Opinion No. 2019 DNH 167

Commissioner of the
U.S. Social Security Administration

**ORDER ON APPEAL**

David Ulitsch has filed two motions[1] to reverse and remand the Social Security Administration's ("SSA") decision to deny his application for a period of disability and disability insurance benefits. An administrative law judge ("ALJ") at SSA found that Ulitsch, despite severe impairments, retains the residual functional capacity ("RFC") to perform light exertional work, subject to certain limitations, and thus is not disabled under Social Security regulations. See 20 C.F.R. § 404.1505(a). This decision was affirmed by the Appeals Council and thus became the final decision on his application. See id. § 404.981. Ulitsch then appealed the decision to this court, see LR 9.1(b), which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

After careful consideration, the court finds that remand is warranted to ensure that substantial evidence supported the

---

[1] Pl.'s Mot. for Order Reversing Decision (doc. no 8); Pl.'s Mot. to Remand (doc. no. 15).

ALJ's RFC and step 5 determinations.  In the proceeding below, the ALJ found that Ulitsch had an RFC falling between the light work and sedentary work ranges, but did not adequately assess the impact of Ulitsch's standing/walking limitation on the occupational base.  Although the ALJ consulted with a vocational expert, the expert's testimony did not specifically explain the impact of Ulitsch's two-hour standing/walking limitation on potential jobs existing in the national economy.  Further, the administrative record does not clearly state what methodology the expert used, if any, to account for Ulitsch's RFC and his limitations.  As such, the court grants Ulitsch's first motion and denies the SSA Commissioner's cross-motion[2] for an order affirming the SSA's final decision, see LR 9.1(e).  Finally, the court denies as moot Ulitsch's second motion challenging the authority of the ALJ under the Appointments Clause, see U.S. Const., Art. II, § 2, cl. 2, given the order of remand on his first motion.

I.  **Background**

In September 2017, an ALJ followed the established five-step sequential evaluation process, see 20 C.F.R. § 404.1520, and found that Ulitsch is not disabled under section 216(i) and 223(d) of the Social Security Act.  At step 1, he found that

---

[2] Doc. no. 11.

Ulitsch had not engaged in substantial gainful activity since December 15, 2015.[3] At step 2, he found that Ulitsch has two severe impairments that significantly limit the ability to perform basic work activities – (i) degenerative disc disease of the lumbar spine and (ii) obesity.[4] At step 3, he found that Ulitsch's physical impairments, considered both individually and in combination, did not meet or medically equal the severity criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[5] Nevertheless, the ALJ stated he would consider the effects of obesity at later steps in the five-step process, including when assessing Ulitsch's RFC.[6]

The ALJ ultimately found that Ulitsch retained "the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he can stand and walk for 2 hours in an 8 hour workday; he cannot climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs;

---

[3] Admin. R. at 14.

[4] Id. In doing so, the ALJ declined to find that Ulitsch's evaluated hypertension and gastroesophageal reflux disease ("GERD") constituted severe impairments because they were "being managed medically, and amenable to proper control by adherence to recommended medical management and medication compliance." Id. at 15. Further, the ALJ noted that "[t]here were no significant problems or limitations notes in the objective record." Id.

[5] Id.

[6] Id.

and he can occasionally balance, stoop, kneel, crouch, and crawl."[7] In doing so, the ALJ found that Ulitsch's medically determinable impairments could reasonably be expected to cause Ulitsch's alleged symptoms – in particular, pain and movement limitations. Nevertheless, he found that Ulitsch's statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record,"[8] which showed "only mild degenerative disc disease and only some abnormalities on objective examination."[9] Further, the ALJ noted that "no treating or examining medical professional persuasively opined limitations beyond the residual functional capacity."[10]

At step 4, the ALJ found that Ulitsch is unable to perform any past relevant work.[11] Finally, at step 5, the ALJ found, based on the testimony of a vocational expert, that Ulitsch, given his age, education, work experience, and residual functional capacity, was capable of making a successful adjustment to work that exists in significant numbers in the

---

[7] Id.

[8] Id. at 16.

[9] Id. at 20.

[10] Id.

[11] Id. at 21-22.

4

national economy, including price marker, laundry classifier, and ticket seller.[12]  Under this framework, the ALJ concluded that a finding of "not disabled" was appropriate.

## II. Applicable legal standard

In reviewing a challenge of a final determination by the SSA, the court limits its review "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  In doing so, the court "review[s] questions of law de novo, but defer[s] to the Commissioner's findings of fact, so long as they are supported by substantial evidence," id., that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).  Though the evidence in the record may support multiple conclusions, the court must still uphold an ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  The court therefore "must uphold a denial of social security . . . benefits unless 'the [Commissioner] has committed a legal or factual error in

---

[12] Id. at 22-23.

evaluating a particular claim.'" Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

**III. Analysis**

On appeal, Ulitsch raises five issues that he contends warrant remand.  In his first motion, he contends that the ALJ erred by failing to properly assess, and ultimately base his RFC on, the medical opinions in the record; classifying Ulitsch as limited to light, rather than sedentary work; relying on vocational testimony that was inconsistent with the regulatory definition for light work; and relying on vocational expert testimony based on a flawed RFC assessment resulting from the errors above.[13]  Additionally, he asserts for the first time in a second motion that the ALJ was not properly appointed as an "Officer" of the United States when he ruled on Ulitsch's application.  After reviewing each issue, the court finds that only the third argument warrants remand.

At step 5, the Commissioner bears the burden of establishing that there are jobs existing in significant numbers in the national economy that a claimant can perform, given his or her age, education, work experience, and residual functional capacity.  See 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1),

---

[13] See Pl.'s Reply (doc. no. 12) at 1.

416.920(a)(4)(v), (g)(1); Goodermote v. Sec'y of HHS, 690 F.2d 5, 7 (1st Cir. 1982). Under some circumstances, the Commissioner can meet [this] burden through the use of a chart contained in the Social Security regulations." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983)). But if "an individual's exertional RFC does not coincide with the exertional criteria of any one of the [exertional] ranges, i.e. sedentary, light, and medium, as defined in sections 404.1567 and 416.967 of the regulations," then the ALJ must "consider the extent of any erosion of the occupational base and access [sic] its significance," advisably with the aid of a vocational expert. Social Security Ruling ("SSR") 83-12, 1983 WL 31253, at *1 (S.S.A. 1983); see also Spalke v. Berryhill, No. 16-10856, 2016 WL 10720160, at *10 (D. Mass. Sept. 20, 2017) (Hillman, J.) (citing SSR 83-12) ("Where a claimant is not capable of performing the full range of a category of work, a vocational expert should be consulted to clarify the implications of the claimant's RFC for the occupational base."); Gross v. Colvin, 213 F. Supp. 3d 229, 234 (D. Mass. 2016) (Talwani, J.) (where claimant's RFC fell between light and sedentary, in part due to a two-hour limitation on standing/walking, "SSR 83-12 advise[d]

the ALJ [to] use a vocational expert to determine the impact the reduced exertional capacity has on the occupational base").

Here, both parties acknowledge that the ALJ's RFC assessment – specifically, that Ulitsch retained the residual functional capacity to perform light work, but could only "stand or walk for 2 hours in an 8-hour work day" – does not neatly coincide with the criteria for light or sedentary work.[14]  Social Security regulations define "light work" as having the strength to lift up to "20 pounds at a time with frequent lifting or carrying of up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b)(6).  Even if a job does not involve significant lifting, it is still light work if it "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  Id.  "As for what qualifies as 'a good deal of walking or standing,' the SSA has explained that 'the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.'"  Baillargeon v. Berryhill, 359 F. Supp. 3d 172, 180 (D.N.H. 2019) (quoting Trudnak v. Berryhill, No. 17-cv-195, 2018 WL 2058103, at *4 (D.N.H. May 3, 2018) (McCafferty, J.); see also SSR 83-10, 1983

---

[14] Admin. R. at 15; see Pl.'s Mot. to Reverse (doc. no. 8) at 9-10; Def.'s Mot. to Affirm Mem. (doc. no. 11-1) at 7.

8

WL 31251, at *6.  Sedentary work, in contrast, is defined as "work performed primarily in a seated position," and which entails sitting for "approximately 6 hours of an 8-hour workday," SSR 83-10, 1983 WL 31251, at *5; see also 20 C.F.R. § 404.1567(a).

SSR 83-12 provides that in a case like Ulitsch's, where "the exertional level falls between two rules which direct opposite conclusions, i.e., "not disabled" at the higher exertional level and "disabled" at the lower exertional level," the ALJ must examine the degree the exertional capacity is reduced, advisably with the aid of vocational expert testimony. SSR 83-12, 1983 WL 31253.  Several district court cases from within the First Circuit illustrate what constitutes an adequate assessment of whether a claimant has a slightly or significantly reduced capacity for light work.  In Saeed v. Berryhill, for example, Judge Burroughs remanded a social security appeal for further consideration where it was uncertain whether an ALJ had sufficiently considered the impact of a two-hour standing/walking limitation on the claimant's occupational base. No. 16-cv-11928, 2018 WL 1243953, at *11 (D. Mass. Mar. 19, 2018).  The ALJ had adopted a light-work RFC similar to Ulitsch's that incorporated a two-hour standing/walking limitation, but did not specifically address this limitation in his questions to the vocational expert.  Judge Burroughs found

that this limitation "appear[ed] to contradict a finding that a claimant can lift or carry at a light work level." Id. at *10. Additionally, she found that the vocational expert had not specifically addressed the impact of this limitation on potential jobs for the claimant in the national economy. Id. Even though Judge Burroughs found that the apparent contradiction did not necessitate a remand, she found remand to be "the better course" to ensure that substantial evidence supported the ALJ's RFC and step 5 determinations. Id. at *11.

Likewise, in Beede v. Colvin, this court remanded a denial of benefits because the ALJ failed to "'elicit a reasonable explanation for [a] conflict [between the vocational expert's testimony and the Dictionary of Occupational Titles] before relying on the [expert's] evidence to support' his determination that Beede was [not] disabled." No. 16-cv-010-JL, 2017 WL 414059, at *4 (D.N.H. Jan. 31, 2017) (quoting SSR 00-4p, 2000 WL 1898704 at *2). The ALJ had determined that the claimant had the residual functional capacity to perform light work, except that he could "stand and walk up to 1-hour per work day [and was] unlimited with respect to sitting but require[d] the ability to alternate position periodically as needed 30 minutes at a time." Id. at *2. In response to the ALJ's hypotheticals, the vocational expert testified that "three [light-duty] jobs met those requirements: price marker, furniture rental

consultant, and laundry classifier." Id. at *4 (footnote omitted). When the ALJ recognized an inconsistency between the expert's testimony and the DOT, he attempted to resolve it by asking whether these jobs would tolerate the claimant's needs for sitting and standing. In response:

> The expert testified that "the Dictionary of Occupational Titles [did] not categorize the sit/stand option" that the ALJ included in Beede's RFC, but that "[t]he jobs provided today as examples do provide a sit/stand option for the individual as in the hypothetical." She drew this conclusion from her "experience in working with employers, human resource representatives, corporation[s], when writing job analyses, when observing individuals in the work place, also asking questions for research and labor market surveys."

Id. The court found that this was not a reasonable explanation for the inconsistency:

> Though the vocational expert outlined her experience, she offered no explanation for how or why (1) jobs listed as "light work" would be "primarily a seated-type position," or (2) these jobs in particular "would tolerate [the] mix of sitting and standing" described in the RFC. Absent such evidence, the ALJ has not satisfied his obligation to "elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support" his determination that Beede was disabled.

Id. (citing SSR 00-4p, 2000 WL 1898704, at *2; Colby v. Barnhart, No. Civ.03-189, 2004 WL 1683142, at *6 (D.N.H. July 27, 2004)).

In light of these decisions, the court similarly finds that the ALJ in this case failed to elicit adequate testimony from

11

the vocational expert to explain how a person with Ulitsch's light-work RFC and limitations could perform the jobs identified by the vocational expert. In his hypotheticals, the ALJ began by asking the vocational expert whether jobs existed in the national economy for individuals of the same age, education, and work experience as Ulitsch and that were limited to light exertional work. In response, the vocational expert identified three jobs: price marker, housekeeper, and laundry classifier.[15] The ALJ then asked whether jobs existed in the national economy for such an individual that was also limited "to standing and walking for two hours in an eight-hour workday." The expert answered that:

> The price marker would continue to fit with the hypothetical as well as the laundry classifier. The housekeeper would not. However, a ticket seller would fit, DOT Code 211.467-030, SVP 2, light, 20,000 jobs. Now, the important – the definition was given for – to be standing or walking for two hours is different than the definition presented by SSA. So, based on my own personal experience, in writing job analyses or labor market surveys or when observing jobs in a worksite, the ticket seller and laundry classifier and price marker have the seating apparatus available for the person. So, this would allow continued work in a light-duty work capacity and sitting, or standing as necessary. So, these jobs meet this.[16]

Like the expert in <u>Beede</u>, the vocational expert here offered no explanation for how or why the "light work" jobs she

---

[15] Admin. R. at 51.

[16] Admin. R. at 53.

12

previously identified for Ulitsch could still be performed by a person who cannot stand or walk for more than two-hours in a workday, for example, by explaining the amount of walking, standing, or sitting required to perform each job.  See also Baillargeon, 359 F. Supp. 3d at 183.  In addition, she did not elaborate on (and the ALJ did not inquire about) how the two-hour standing/walking limitation deviated from the definition presented by SSA or the DOT.[17]  Finally, at no point did the ALJ acknowledge in his questions to the vocational expert that the RFC fell between two work levels, including one that would require a finding of disability.[18]

The court does not hold "that a two-hour standing/walking limitation necessitates a RFC of sedentary work, or that the mere inconsistency between such a standing/walking limitation" and the definition presented by SSA or the DOT requires a

---

[17] Admin. R. at 53.  As his last question, the ALJ asked the vocational expert: "And other than the difference you've already explained with respect to definitions in the DOT and your past experiences, your testimony (sic) consistent with the DOT?"  Admin. R. at 55.  The expert responded, "Yes, your Honor."  The administrative record, however, does not reflect any direct questioning or answers about the differences.

[18] The court observes that the ALJ's decision does introduce the Medical Vocational Guidelines and discusses how certain findings would lead to a conclusion of "disabled" or "not disabled."  See Admin. R. at 21.  But this language appears to be a boilerplate standard rather than language specifically analyzing Ulitsch's case.

remand.  See Saeed, 2018 WL 1243953, at *11.  Under these circumstances, however, the court finds, just as Judge Burroughs did in Saeed, that remand is warranted to ensure that these potential conflicts were addressed or, put differently, that there is substantial evidence addressing the impact of Ulitsch's two-hour standing/walking limitation on the occupational base.  See Saeed, 2018 WL 1243953, at *11; see also Gross, 213 F. Supp. 3d at 233-34 (remanding where claimant's RFC had two-hour standing/walking limitation, but it was not clear "what methodology [vocational expert] used to account for the reduced exertional capacity of [claimant]").  Accordingly, the court does not find that substantial evidence supports the ALJ's RFC and step 5 determinations, and thus grants Ulitsch's first motion.

Because the court grants Ulitsch's first motion, it does not reach the issue raised by Ulitsch's second motion concerning whether the ALJ was properly appointed under the Constitution.  In June 2018 (after Ulitsch's 2017 hearing before the ALJ), the Supreme Court held that ALJs are "officers" under the Appointments Clause, U.S. Const., Art. II, § 2, cl. 2.  Lucia v. Securities and Exchange Commission, 138 S. Ct. 2044 (2018).  The next month, the Social Security Commissioner ratified the appointments of all then-existing ALJs.  See Social Security EM-18003 REV 2.  On remand, any ALJ reviewing Ulitsch's application

for benefits will have the benefit of this appointment. Any review by an appointed ALJ will therefore render Ulitsch's current Appointments-Clause challenge moot.

## IV. Conclusion

In sum, the court grants Ulitsch's first motion to reverse,[19] denies his second motion to reverse[20] as moot, and denies the Commission's motion for an order affirming its disability insurance benefits decision.[21] This matter is remanded for further proceedings consistent with this order. The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_/s/ Joe Laplante_
Joseph N. Laplante
United States District Judge

Dated: September 26, 2019

cc: Alexandra M. Jackson, Esq.
    Rami M. Vanegas, Esq.

---

[19] Doc. no. 8.

[20] Doc. no. 15.

[21] Doc. no. 11.